ARTHUR L. VAN ETTEN and MEDRIC TRUDEAU, Plaintiffs, *v.* SPHINX HOLDING CORPORATION et al., Defendants.

(Supreme Court, Monroe Special Term, February, 1921.)

Mechanics' lien — foreclosure — motions for leave to serve supplemental answer and to intervene denied.

The final judgment in an action to foreclose a mechanics' lien, from which no appeal was taken, directed that the amount

of the liens of the several defendant lienors be first paid, then the amount of plaintiffs' lien, the surplus, if any, to be paid into court. After the entry of said judgment the directors of the defendant owner, upon the affirmance of a judgment recovered against them on their written guaranty that a first mortgage upon the premises would be procured and a portion of the net proceeds paid to the contractor, paid the judgment. *Held,* that a motion by the defendant owner for leave to serve a supplemental answer and a motion by said directors for leave to intervene, both motions being predicated upon the fact of the payment of such judgment, will be denied.

The defendant lienors, whose rights in the real property, as finally adjudicated in the lien action, are superior to those of the others, have no concern with the differences among the others, except that they be no longer delayed in securing the fruits of their litigation.

Motion on behalf of the above named defendant for leave to serve a supplemental answer herein and on behalf of Charles M. Hirschfelder and ten others for leave to intervene and become parties defendant.

Herbert J. Stull (Percival D. Oviatt, of counsel), for defendant Sphinx Holding Corporation and said proposed intervenors.

William MacFarlane, for plaintiffs, and upon this motion for all the defendants other than Sphinx Holding Corporation and Frank Strauss.

Charles B. Bechtold, for defendant Frank Strauss.

Stephens, J. This action was commenced in January, 1918, for the purpose of foreclosing the plaintiffs' mechanics lien upon premises owned by the defendant Sphinx Holding Corporation; the other defendants were also lienors; the action was tried March 17 and 18, 1919, and the questions involved were afterwards submitted upon written briefs;

memorandum of decision in favor of the plaintiffs was filed in August, 1919, which detailed all of the essential facts found and directed formal findings to be prepared as indicated in the memorandum; the findings were presented for signature on May 25, 1920, and the final decree was entered on that day, establishing the lien of the plaintiffs and the liens of some of the defendants and containing the usual directions to sell the premises to satisfy the liens; no appeal has been taken from that judgment and the premises have been advertised for sale.

It is the situation thus briefly summarized that the defendant corporation and the proposed intervenors seek to disturb by reason of other facts which it is now necessary to consider.

The plaintiffs in this action and the Sphinx Holding Corporation entered into a contract April 14, 1917, by which the plaintiffs agreed to put up a building upon real estate owned by the said defendant at a stipulated price; the contract provided that as soon as the roof was on the building the owner would apply for and secure a first mortgage on the property for at least $12,000, the net proceeds of which, after paying a mortgage on the building lot for $1,150, would be paid to the plaintiff contractors. In the performance of this contract the liens involved in this action had their rise.

The proposed intervenors, who were directors of the Sphinx Holding Corporation, guaranteed, in writing, the execution of the building contract "in the following particulars, *First:* that the mortgage will be procured upon said premises as provided in said contract and the proceeds thereof paid to the contractor as therein mentioned."

The roof was on the building on or about August 27, 1917, but no money was procured by mortgage or

otherwise and no payment was made to the plaintiffs upon the contract at that time or at any other time, except a small sum negligible for our present purpose.

In July, 1918, the plaintiffs herein commenced an action at law against the proposed intervenors upon their guaranty; the first trial resulted favorably to the defendants; upon appeal the plaintiffs' exceptions were sustained and a new trial granted; on the second trial a verdict was directed in favor of the plaintiffs for an amount equivalent to the net proceeds of the twelve thousand dollar mortgage with interest from August 27, 1917; after the affirmance on appeal of the judgment entered upon the verdict and on or about October 16, 1920, the said proposed intervenors, the defendants in that action, paid the judgment; it is upon this fact of payment that the Sphinx Holding Corporation founds its application to serve a supplemental answer in this action and the proposed intervenors predicate their right to intervene.

A better understanding of the problem can perhaps be had by having in mind the relative stages of these two actions during their parallel course through the court.

The foreclosure action was first commenced; the action at law was first tried and the plaintiffs were unsuccessful; this action to foreclose the liens was tried and the memorandum of decison filed favorable to the plaintiffs, while an appeal was pending from the determination of the trial court in the action brought upon the guaranty; the second trial in the last mentioned action in which the plaintiffs were successful and the appeal were had during the period that elapsed after decision in the lien action was rendered and the entry of judgment in it; the time came, therefore, when the plaintiffs had a favorable judgment in both the action upon the guaranty and that

upon their lien; their lien having been established for the value of all the labor and material that entered into the building it is obvious that they had secured double relief, in appearance at least, and practically so if the real estate were of sufficient value to satisfy their lien and the costs and expenses of the action brought to foreclose it; in this state of the relations between the parties concerned the proposed intervenors paid the judgment against them.

It was suggested upon the argument that it was neither necessary nor proper upon this motion to determine what the equities of the moving parties are, but only to grant the relief asked for and leave for later decision, after further inquiry, the merits of the controversy. *Johnston* v. *Donvan,* 106 N. Y. 269, is cited in support of that proposition; the facts in that case and in this are widely different; there the application was made before the time to answer had expired and evidently questions of fact needed to be determined on common-law evidence; here, all the facts have been adjudicated, the action has proceeded to final judgment, and that judgment has settled the interests of all the parties in the property beyond the hazard of interference; these fixed rights ought not to be swept aside and the entire litigation in which they were established abrogated unless there be a very clear comprehension that the claims of the proposed intervenors are rooted in very definite and precise equities.

The answers which the moving parties seek to interpose are not a part of the papers before me, but the desire of the corporate defendant is ''to file and serve an amended supplemental answer'' and that of the proposed intervenors is ''to come in as parties defendants to the action and to file and serve answers herein setting up such rights as they may have or claim to

have in respect to the real property in and by said judgment herein directed to be sold.''

The only fact that the Sphinx Corporation could properly plead would be that the first installment on the contract price of the building has been paid to the plaintiffs and the proposed intervenors could only be heard to say in their answers that they paid it; whatever rights, therefore, the moving parties have acquired since the final determination of the two actions are such as arise between themselves and the plaintiffs; the skein is further untangled by the circumstance that the rights of the proposed intervenors are derivative from those of the defendant corporation; by the payment of the judgment against them they became entitled to be subrogated to the rights of the defendant owner, and to the security held by the plaintiffs for the payment of the owner's debt. *United States F. & G. Co.* v. *Carnegie Trust Co.,* 161 App. Div. 429; affd., 213 N. Y. 629.

They are in no different position than an owner who makes a payment to a contractor or one who makes advances upon a mortgage with knowledge that notices of lien have been filed; such payments and advances are made at the peril of those making them and do not affect the remedy of the lienor. Lien Law, §§ 11, 13; *Foshay* v. *Robinson,* 137 N. Y. 134; *Gass* v. *Souther,* 46 App. Div. 256; affd., 167 N. Y. 604; *Upton Co.* v. *Flynn,* 169 App. Div. 79.

The moving parties claim the absolute right to be allowed to set up their alleged defenses under section 452 of the Code of Civil Procedure. *Uhlfelder* v. *Tamsen,* 15 App. Div. 436, upon which they rely does not sustain that position; at most it holds that where the right to intervene is absolute no conditions can be imposed; we are not confronted here, in my opinion, with a situation that is governed by the imperatives of

the statute; the Sphinx Corporation is already a party to the action and the complete determination of the action could be had and has been had without the presence of the proposed intervenors as parties; they do not come within the description of "persons not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined." *Chapman* v. *Forbes,* 123 N. Y. 532, 538. The dictum in *Drake* v. *New York Suburban Water Co.,* 36 App. Div. 275, had no application to the decision in that case and has no more in this one. *Winfield* v. *Stacom,* 40 App. Div. 95, holds only that specific liens upon undivided shares of parties to a partition action should be determined before interlocutory judgment instead of after and that a mortgagee, whose mortgage is subsequent to the commencement of the action, has a right to be made a party before interlocutory judgment.

The judgment in this action directs that from the net proceeds of the sale of the real estate the amount of the liens of the several defendant lienors be first paid; then the amount of plaintiff's lien, less the sums so first directed to be paid, and that the surplus, if any, be paid into court; as above suggested the controversy afterward arising is limited to the plaintiffs, the defendant owner and the proposed intervenors; the defendant lienors, whose rights in the real property as finally adjudicated are superior to those of the others, have no concern with the differences among the others except that they themselves be not longer delayed in securing the fruits of their litigation.

It follows, leaving out of consideration the laches of the applicants, that the coveted privilege to intervene and the defendant owner's request to set up the payment of the judgment in the action at law as a defense, must be denied.

It may or may not be profitable to prolong the discussion to indicate what might have been done or remains yet to do to ameliorate the hardship of the proposed intervenors' position.

An action in equity to foreclose a mechanic's lien and an action at law to recover the debt, which the notice of lien was filed to secure, are concurrent remedies; there may be two judgments but there can be but one satisfaction of the debt. *Robinson* v. *Fay,* 19 N. Y. Supp. 120; *Raven* v. *Smith,* 87 Hun, 90; *Bryson* v. *St. Helen,* 79 id. 167; *Matter of Gould Coupler Co.,* Id. 206; *Smith* v. *Fleischman,* 23 App. Div. 355.

The proposed intervenors are not necessarily remediless; the moneys remaining from the proceeds of the sale after the defendant lienors are paid pursuant to the judgment belong equitably to them, to the extent of their just claim; these moneys will consist of the difference between the amount required to pay said defendants and the amount of plaintiffs' lien together with the surplus; in this fashion they would get the benefit of subrogation to the rights both of the defendant owner and of so much of the plaintiffs' security as is available; if nothing can be realized from these sources because of the inadequacy of the value of the property the only resort would be to the judgment for deficiency against the owner and perhaps to an action against the plaintiffs; how practical these suggestions may prove to be depends upon the value of the property; and the solvency of the plaintiffs and defendant owner.

No useful purpose will now be served by indicating what remedies were permissible in the earlier stages of this dual litigation.

The motion is denied, with ten dollars costs.

Motion denied, with ten dollars costs.